UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 NOV 16 PM 2:31

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| SOCIAL AID AND PLEASURE CLUB TASK FORCE; TAMARA JACKSON; MICHELLE LONGINO; ANTHONY HOOKFIN; LETECHA WATKINS; HERMAN PALMER; COREY WOODS; JOE STERN; DESIREE JONES; BYRON HOGAN; SABLE LEWIS; LINDA PORTER; PERRY FRANKLIN; NATHANIEL WILLIS; FRANK M. ALLEN; WENDELL JACKSON; JENEAN SANDERS; and CORNELL GLASPER,<br><br>Plaintiffs,<br><br>– Versus –<br><br>CITY OF NEW ORLEANS, LOUISIANA; C. RAY NAGIN, Mayor, City of New Orleans, in his official capacity; WARREN J. RILEY, Superintendent, New Orleans Police Department, in his official capacity; KATHLEEN BLANCO, Governor, State of Louisiana, in her official capacity,<br><br>Defendants. | NUMBER:<br><br>JUDGE:<br><br>MAG:<br><br>CIVIL RIGHTS ACTION<br>42 U.S.C. § 1983<br><br>DECLARATORY AND INJUNCTIVE RELIEF<br><br>RE: UNCONSTITUTIONALITY OF NEW ORLEANS ORDINANCES AND STATE STATUTE<br><br>06-10057<br><br>SECT. N MAG. 5 |

## COMPLAINT

### I. INTRODUCTION

1. This is an action pursuant to 42 U.S.C. §§ 1983 and 1988, for a preliminary injunction, declaratory judgment, nominal damages and permanent injunctive relief to redress Defendants' violations of Plaintiffs' rights as protected by the First and Fourteenth Amendments to the United States Constitution.

Fee $350
___ Process ___
X  Dktd ___
___ CtRmDep ___
___ Doc. No ___

1

2. Plaintiffs are members of Social Aid and Pleasure Clubs, which have a long history of parading in the City of New Orleans. However, the unreasonable and excessive fees presently being imposed by the Defendants threaten to eliminate this important cultural tradition.

3. Specifically, Plaintiffs seek judicial review of the New Orleans parade permit scheme and LA R.S. 14:326, which will function to prevent Plaintiffs from exercising their First Amendment right to freedom of speech and expression, as they effectively tax Plaintiffs' constitutionally protected expression. Should the above-referenced laws not be enjoined, there is very little doubt that Plaintiffs' cultural tradition will cease to exist.

## II. JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6. Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202. A declaration of the law is necessary and appropriate to determine the respective rights and duties of the parties to this action.

## III. THE PARTIES

A. **THE PLAINTIFFS:**

7. Plaintiff Social Aid and Pleasure Club Task Force is a Louisiana non-profit organization operating in the State of Louisiana and domiciled in the City of New Orleans. Plaintiff Tamara Jackson is the President of the Social Aid and Pleasure Club Task Force. The Task Force was formed to protect the main line organizations and their cultural interests.

8. Plaintiff Tamara Jackson is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Jackson has been involved with the Second Line tradition since she was a child. She is a founding member of the VIP Ladies and Kids Social Aid and Pleasure Club, formed in 2003, and presently scheduled to parade in March of 2007.

9. Plaintiff Michelle Longino is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Longino is a member of the New Orleans Bayou Steppers, which desires to schedule a parade date.

10. Plaintiff Anthony Hookfin is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Hookfin is a member of Men of Class Social Aid and Pleasure Club, which was founded in 2003. Men of Class just paraded October 29, 2006, but it relied upon donations to be able to do so because of the unreasonable and excessive fees.

11. Plaintiff Latecha Watkins is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Watkins is Vice President of the Undefeated Divas, presently scheduled to parade January 21, 2007.

12. Plaintiff Herman Palmer is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Palmer is Vice President of New Generation Social Aid and Pleasure Club, founded in 2000. New Generation is presently scheduled to parade December 10, 2006.

13. Plaintiff Corey Woods is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Woods has been involved in the Second Line tradition since he was a child, and presently is Business

Manager of Nine Times Social Aid and Pleasure Club, which was formed in 1998. Nine Times is presently scheduled to parade November 18, 2006.

14. Plaintiff Joe Stern is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Stern is a member of Prince of Wales Social Aid and Pleasure Club, previously scheduled to parade October 8, 2006, but postponed to November 5, 2006 due to the unreasonable and excessive fees complained of in this action. Prince of Wales is the second oldest club still parading; it was founded in 1928.

15. Plaintiff Desiree Jones is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Jones is Sergeant at Arms of the Lady Rulers Social Aid and Pleasure Club, which was founded in 2000. The Lady Rulers are presently unable to parade due to the fees complained of in this action.

16. Plaintiff Byron Hogan is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Hogan is a member of the Dumaine Street Gang, presently scheduled to parade December 3, 2006.

17. Plaintiff Sable Lewis is an individual of the age of majority, presently residing in Jefferson Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Lewis is a member of the Mahogany Ladies Social and Pleasure Club.

18. Plaintiff Linda Porter is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Porter is President of the Lady Buckjumpers Social Aid and Pleasure Club, presently scheduled to parade November 26, 2006.

19. Plaintiff Perry Franklin is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Franklin is a member of the Keepin' It Real Social Aid and Pleasure Club, presently scheduled to parade March 12, 2007.

20. Plaintiff Nathaniel Willis is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Willis is a member of the Single Men Social Aid and Pleasure Club, presently scheduled to parade March 2007.

21. Plaintiff Frank M. Allen is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Allen is Financial Secretary of Revolution Social and Pleasure Club, founded in 1998. The Revolution is presently scheduled to parade March 25, 2007.

22. Plaintiff Wendell Jackson is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Jackson is a founding member of Original Four, which is a 26 year-old club. Original Four should have paraded the fourth weekend in October, but was unable to due to the unreasonable and excessive escort fees.

23. Plaintiff JeNean Sanders is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Sanders is a member of We Are One Social Aid and Pleasure Club, which is presently unable to parade because of the unreasonable and excessive fees.

24. Plaintiff Cornell Glasper is an individual of the age of majority, presently residing in Orleans Parish, Louisiana, within the Eastern District of Louisiana. Plaintiff Glasper is the

President of the Treme Sidewalk Steppers Social Aid and Pleasure Club, hoping to parade February 25, 2007.

25. Plaintiffs face a substantial and immediate threat of detention, arrest, prosecution and imprisonment under the terms of the challenged state statute and local ordinances.

## B. THE DEFENDANTS:

26. Defendant City of New Orleans, Louisiana, is a political subdivision of the State of Louisiana and a municipal corporation, which was at all relevant times the employer of the Defendant New Orleans Police Department personnel, named as defendant herein. Defendant City is directly liable for acts complained of herein due to the policies, practices, procedures and customs of its police department and its employees. Defendant City is further directly liable for acts complained of herein due to its enactment of municipal ordinances that violate Plaintiffs' rights. Defendant City maintains the right and power to sue and be sued.

27. Defendant C. Ray Nagin, at all times pertinent herein, was the duly elected Mayor of the City of New Orleans. Defendant Nagin is responsible for the supervision of the New Orleans Police Department, and, as such, is a final policymaker with regard to police practices. Additionally, Defendant Nagin is responsible for the execution of the ordinances of the City of New Orleans, complained of herein. He is sued in his official capacity. He is a person of the full age of majority, and is a resident of the Eastern District of Louisiana.

28. Defendant Warren J. Riley is the duly appointed Superintendent of Police for the City of New Orleans. As such, he is charged with the duty of enforcement of criminal laws of the State of Louisiana and the City of New Orleans, including the laws complained of herein. He is listed in the relevant City ordinances as the enforcer of the laws complained of

herein, and as the ultimate decision and policymaker. He is sued in his official capacity. He is a person of the full age of majority, and is a resident of the Eastern District of Louisiana.

29. Defendant Kathleen Babineaux Blanco is the Governor and Chief Executive Officer of the State of Louisiana, and, as such, is obligated under the Constitution of the State of Louisiana and her oath as Governor to execute and oversee the implementation and enforcement of the laws of the State of Louisiana, including LA R.S. 14:326. LA CONST. Art. 4, § 5(a). She is sued in her official capacity. She is a person of the full age of majority and is a resident of East Baton Rouge Parish.

## IV. THE STATUTORY FRAMEWORK

30. Below is the applicable statutory framework.

31. L.A. R.S. 14:326. Processions, marches, parades, or demonstrations; permits; liability; bond; exemptions; penalty.

   a. Any procession, march, parade or public demonstration of any kind or for whatever purpose is prohibited by any group, association or organization on any public sidewalk, street, highway, bridge, alley, road or other public passageway of any municipality or unincorporated town or village unless there first has been obtained a permit therefor, and in all cases the person or persons or the group, association or organization to whom the permit is issued shall be liable for all damage to property or persons which may arise out of or in connection with any such procession, march, parade or public demonstration for which a permit is issued.

   b. Application for the permit required herein shall be made to the mayor and governing authority of the municipality or to the governing authority of the parish in which the unincorporated town or village in which the procession, march, parade or public demonstration is located, as the case may be. Permits may be granted by the authority

  to which application is made, provided, however, that bond in the amount of ten thousand dollars has first been filed with the mayor and municipal governing authority or with parish governing authority, as the case may be, as security for the payment of any damage or injury which may occur as the result of, or in connection with such procession, march, parade or public demonstration.

 c. The provisions of this Section shall apply to all groups, associations, or organizations regardless of race, creed, disability, as defined in R.S. 51:2232(11), color, or political beliefs of its members; however, nothing contained herein shall apply to a bona fide legitimate labor organization or professional firefighter or police association or to any lawful activity of a labor union permitted by law, nor shall these provisions apply to any procession or parade directly held or sponsored by the governing authority of any municipality or the governing authority of any parish, nor shall these provisions apply to any procession, march, or parade directly held or sponsored by a bona fide organization specifically for the celebration of Mardi Gras and/or directly related prelenten or carnival festivities, school parades or other functions, parish parades or other functions, state, parish, or municipal fairs or other such related activities. However, the provisions of this Section shall apply only to parishes with a population of more than four hundred fifty thousand.

32. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1651. Permit required. Any person desiring to stage, present or conduct a parade, motorcade, procession, march or any other planned movement of persons, vehicles or animals on the streets of the city, except road races as set forth in section 146-3, shall first secure from the department of finance a permit to engage in such activity.

33. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1652. Penalty for violations. Any person who shall stage, present or conduct or attempt to stage, present, conduct or participate in a parade on the city streets without first having obtained a permit therefor (except Mardi Gras or Carnival parades or road races) or who shall otherwise violate any of the provisions of this article shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $100.00 or imprisoned for not more than 90 days, or both, at the discretion of the court.

34. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1653. Exceptions.

   (a) The provisions of this article shall not be applicable to funeral processions or to parades by forces of the United States Armed Services, the military forces of this state or forces of the departments of police and fire of the city.

   (b) No part of this article shall be construed to interfere with lawful picketing.

35. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1654. Application for permit.

   (a) Any person desiring to conduct or manage a parade shall, no later than 15 days before the date on which it is proposed to conduct such a parade, file with the superintendent of police a verified application for a written route clearance on a form furnished by the superintendent of police setting forth the following information:

      (1) The name of the person or organization wishing to conduct such parade;

      (2) If the parade is proposed to be conducted for, on behalf of or by an organization, the name, address and telephone number of the headquarters of the organization and the authorized and responsible head of such organization;

      (3) The name, address and telephone number of the person who will be the parade chairman and will be responsible for its conduct;

(4) The name, address and telephone number of the person or organization to whom the permit is desired to be issued;

(5) The date when such parade is to be conducted;

(6) The route to be traveled, the starting point and the termination point;

(7) The approximate number of persons who and animals and vehicles which will constitute such parades; the type of animals and a description of the vehicles;

(8) The hour when such parade will start and terminate;

(9) The total number of hours between the starting time and termination time, not to exceed four hours; an exception may be allowed for an organization holding a convention of 10,000 participants or more in the city on the proposed permit date;

(10) Whether such parade will occupy all or only one-half of the width of the streets proposed to be traversed;

(11) A description of assembly and disassembly areas and streets to be used by such parades;

(12) The time at which units of the parade will begin to assemble at any such assembly area; total time of assembly not to exceed one hour;

(13) The interval of space to be maintained between units of such parade, not to exceed 30 feet.

36. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1655. Route clearance. Any applicant for a permit under this article except applicants for Mardi Gras or Carnival parade permits or road race permits, must present to the department of finance, at the time of filing of the application, written route clearance from the superintendent of police.

37. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1656. Consideration of application. After the application for a written route clearance has been filed, the superintendent of police shall consider the application and such other information as he may otherwise obtain and shall assign the number of police officers as he determines necessary to accompany the parade from the time of assembly of the parade until such time that the parade shall terminate.

38. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1658. Compensation of police.

   (a) The police officers shall be compensated at the city's overtime rate, provided that no more than ten police officers be compensated with funds provided by the person or organization who is named as applicant on the application. Notwithstanding the provisions of this section, no funds for compensation of police officers shall be required from an organization which will be holding a convention of 10,000 participants or more in the city on the proposed permit date.

   (b) When the superintendent of police determines that the parade organizers shall provide the compensation for the assigned police officers, the organizers shall be notified of the amount to be paid. The amount shall be paid to the department of finance at the time that parade organizers obtain the permit. No permit shall be issued until such amount has been paid.

39. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1659. Standards for issuance. The superintendent of police shall issue a written route clearance for a parade if, from a consideration of the application or such other information as the superintendent of police may otherwise obtain, or both, the superintendent of police finds that:

11

(1) The conduct of such parade will not substantially interrupt the safe and orderly movement of other traffic contiguous to its route;

(2) The conduct of such parade will not require the diversion of so great a number of police officers to properly police the line of movement and the areas contiguous thereto as to prevent normal police protection to the rest of the city;

(3) The concentration of persons, animals and vehicles at the assembly areas of the parade will not unduly interfere with proper fire and police protection of or ambulance service to areas contiguous to such assembly areas;

(4) The conduct of such parade will not interfere with the movement of firefighting equipment en route to a fire;

(5) The conduct of such parade is not reasonably likely to cause injury to persons or property;

(6) Such parade will move from its point of termination in four hours or less; the superintendent of police may establish a specific time limitation in excess of four hours for an organization holding a convention of 10,000 or more participants in the city on the proposed permit date;

(7) The conduct of such parade will not obstruct any construction or maintenance work scheduled to take place upon the public streets;

(8) The applicant meets with all the requirements of this section.

40. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1660. Alternative date, time, route. If the conduct of the parade on the proposed date, time and route is found by the superintendent of police to conflict with any of the requirements of this section, he may suggest an alternate date, time and route. If the applicant desires to accept such alternate

date, time and route, he may, within five days but no less than seven days prior to the parade, file a notice of acceptance with the superintendent of police; and the superintendent of police shall proceed to issue the written route clearance.

41. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1663. Denial of permit. If the superintendent of police finds that such written route clearance should not be issued, he shall mail notice of his action denying the written route clearance to the applicant, stating in general terms the reasons for the denial thereof.

## V. FACTUAL ALLEGATIONS

42. The Second Line parades, put on by Social Aid and Pleasure Clubs, are a cherished New Orleans tradition, said parades having their historical roots in community contributions made toward funeral and burial expenses for African Americans in the late 1880s, when few African Americans could afford those expenses. Today the parades continue as an expression of the unique culture and history of the African American community in New Orleans, and the City of New Orleans at large, and, as such, are protected speech within the purview of the First and Fourteenth Amendments to the Constitution of the United States.

43. On January 15, 2006, the New Orleans Social Aid and Pleasure Club Task Force organized a historic second line that included thirty-two clubs and was designed to celebrate this unique cultural tradition and highlight the need for housing, jobs, education and healthcare in New Orleans following Hurricane Katrina. The parade was intended and designed to be a positive and peaceful celebration of the culture of the participants and New Orleans.

44. A shooting occurred in the crowd watching the parade near the end of the parade route. This incident was unrelated to any of the parade participants, and, upon information and belief, was carried out by opportunistic, dissident elements of the City of New Orleans,

who bear no relationship to the Plaintiffs or the parade, but were using the gathering to carry out their individual agendas or grudges.

45. On January 31, 2006, a memorandum was written by Defendant Superintendent of New Orleans Police Department Warren J. Riley stating, "(i)n order to create a safer environment before, during, and after Second Line Parades, the New Orleans Police Department has modified the police requirements for such events."

46. The memorandum states that Second Line clubs must prove compliance with La RS 14:326, the Louisiana state statute making it unlawful to parade without a permit, and also requiring that bond be posted by any organization wishing to parade or march.

47. The memorandum further outlines increased police requirements for Second Line parades.

48. Pursuant to this directive from Defendant Riley, Captain Harry P. Mendoza, Commander of the Traffic Division, calculated the new fees to be charged the Second Line Parades. He concluded that the new requirements would result in a charge of $4,445.00 per Parade.

49. After negotiations with members of some of the Social Aid and Pleasure Clubs, the New Orleans Police Department, hereinafter "NOPD," lowered the cost of a one-band/ one-division parade to $3,760.00, but the prices increased from there according to the size of the parade. After further meetings with the Social Aid and Pleasure Clubs, the NOPD agreed to lower the fee to $2,200.00.

50. Unfortunately, there later was another shooting in a crowd waiting for a Second Line parade, again perpetrated by persons external to the Social Aid and Pleasure Clubs, and carried out, upon information and belief, by opportunistic, dissident members of the City desiring to settle their personal agendas or grudges. Commendably, New Orleans police

officers immediately apprehended the shooter. However, the NOPD again raised the fee for police escorts at Second Line parades to $3760.00.

51. Members of some Social Aid and Pleasure Clubs asked Defendant Riley if they could hold a silent parade to stop at the site of the shooting and hold a prayer service, in order to denounce the violence that took place there. Defendant Riley denied that request outright.

52. The new fees far exceed what most Social Aid and Pleasure Clubs are able to pay to parade. If they continue to be enforced, the increased fees and bonding requirements will prevent Plaintiffs from being able to parade.

53. The new police requirements are so excessive that they do not even comply with the Municipal Code itself. The New Orleans Municipal Code limits at ten the number of officers for whom a parading club may be charged. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1658(a). This limitation is provided in an attempt to prevent the police escort fees from being too onerous. In the immediate case, Defendants City and Riley are exceeding even the limitation provided by the Code. Even were they to adhere to the limit in the Code the police fees would impermissibly burden Plaintiffs' First Amendment rights, however, the fact that they are exceeding the limits of the Code is further evidence that the fees are unreasonable and excessive.

54. Many members of the Clubs, including Plaintiffs, are working class families. They are persons struggling to return to the City of New Orleans, dealing with the loss of family unity, the loss of homes, and the loss of normalcy. The City of New Orleans, rather than encouraging their return, has instead created barriers to the resumption of an important means of expression for these returning New Orleanians. The Second Line tradition is a

peaceful, nonviolent tradition. What the criminals could not destroy the City is; rather than protecting, it is punishing the victims.

55. Plaintiffs have made numerous requests that the police chief rescind the unreasonable fees, to no avail.

56. Plaintiffs, by counsel, have issued letters dated May 16, 2006 and June 2, 2006 to Defendants requesting that Defendant Riley rescind the unreasonable fees to no avail.

57. Additionally, parading season has begun, and Defendants Riley and City have demonstrated that they intend to impose the unreasonable fees upon Plaintiffs this year.

58. Because Plaintiffs have been unable to negotiate reduced fees with Defendants, and because Plaintiffs seek to exercise their rights under the First Amendment, Plaintiffs turn to the Court for redress of these unlawful actions.

59. Plaintiffs have paraded in the past and intend to parade in the future. Plaintiffs are desirous of parading, but face a substantial and immediate threat of detention or arrest if they parade without a permit or a police escort. Plaintiffs have suffered and will continue to suffer irreparable harm.

60. Defendants engaged in such conduct intentionally, willfully, and in disregard of Plaintiffs' rights.

61. At all times relevant, Defendants were acting under color of law within the meaning of 42 U.S.C. § 1983.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(City of New Orleans parade permit scheme, including and especially §§ 154-1653 and 154-1658, is unconstitutional, both facially and as applied)**

62. Plaintiffs reallege and incorporate, as though fully set forth herein, each and every allegation contained above.

63. The Code of Ordinances for the City of New Orleans requires every person engaging in any "planned movement" of people to first obtain a permit from the department of finance. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1651. A person parading without a permit is guilty of a misdemeanor, and is subject to arrest or fine. MUNICIPAL CODE; CITY OF NEW ORLEANS Sec. 154-1652.

64. The aforementioned ordinances are unconstitutional because they contain exemptions for "favored speech." § 154-1653 provides exemptions from the permit scheme and its accompanying requirements, providing, "the provisions of this article shall not be applicable to funeral processions or to parades by forces of the United States Armed Services, the military forces of this state or forces of the departments of police and fire of the city." This is a violation of Plaintiffs' rights to freedom of speech and equal protection of the laws, as secured by the First and Fourteenth Amendments to the Constitution.

65. The aforementioned ordinances are unconstitutional because they afford the superintendent of police, named herein as Defendant Riley, a constitutionally impermissible amount of discretion. Pursuant to § 154-1656 of the New Orleans municipal code, "the superintendent of police shall consider the application and such other information as he may otherwise obtain and shall assign the number of police officers as he determines necessary to accompany the parade...." Based on his assessment of the appropriate number of officers, the Code then provides "when the superintendent of police determines that the parade organizers shall provide compensation for the assigned police officer, the organizers shall be notified of the amount to be paid. The amount shall be paid to the department of finance at the time that parade organizers obtain the permit. No permit shall issue until such amount has been paid." MUNICIPAL CODE; CITY OF NEW ORLEANS § 154-1658(b). This

provision provides Defendant Riley with an unconstitutional amount of discretion in assessing and setting police escort fees, in violation of Plaintiffs' rights to freedom of speech and equal protection of the laws, as protected by the First and Fourteenth Amendments to the Constitution.

66. The aforementioned ordinances are unconstitutional because they fail to contain an indigency exception. The New Orleans permit scheme does not provide for a "waiver" for those who lack sufficient funds to apply for a permit, or to pay escort fees. This lack of an indigency exception functions to prevent low-income people from exercising their right to freedom of speech, in violation of the First Amendment.

67. The aforementioned ordinances are unconstitutional because participants are required to compensate police at the overtime rate. MUNICIPAL CODE; CITY OF NEW ORLEANS § 154-1658(a). Upon information and belief, police officers working the parade detail are paid at regular, rather than overtime, rates. In this way the City is profiting from the First Amendment activity of Plaintiffs, at Plaintiffs' expense, and in violation of the First Amendment.

68. The aforementioned ordinances are unconstitutional because there is no appeal mechanism upon denial of a permit. If Defendant Riley denies a parade permit the Code does not provide for any review process of his decision, in violation of the First Amendment.

69. Plaintiffs will suffer irreparable injury as a result of the Defendant's illegal conduct.

### SECOND CLAIM FOR RELIEF
### (Enforcement of LA R.S. 14:326 is unlawful)

70. Plaintiffs reallege and incorporate, as though fully set forth herein, each and every allegation contained above.

71. LA R.S. 14:326(C) states that a permit is required for all marches, protests, and demonstrations, but there are many organizations exempted from the rule, including labor organizations, police and firefighter organizations, labor unions, municipality-sponsored events, Mardi Gras, school parades and fairs. These organizations are also exempt from a $10,000 bond, which LA R.S. 14:326(B) also requires for an event.

72. Defendants City of New Orleans and Warren J. Riley are forcing all Second Line parades to comply with the bonding requirements set forth in LA R.S. 14:326.

73. LA R.S. 14:326 is unconstitutional on its face because of the exemptions to the statute, outlined above. A government imposed, content-based burden is placed on only some speech. These exemptions render the statute unconstitutional, as a violation of Plaintiffs' rights as protected by the First and Fourteenth Amendments to the United States Constitution.

74. LA R.S. 14:326 is further unconstitutional because it is being unconstitutionally applied. Upon information and belief, not all groups desiring to parade in New Orleans are required to pay the bond contained therein. This selective application violates Plaintiffs' rights as protected by the First and Fourteenth Amendments to the United States Constitution.

75. Plaintiffs will suffer irreparable injury as a result of the Defendants' illegal conduct.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, having no adequate remedy at law, pray for the following:

1. That a preliminary injunction and permanent injunction be issued restraining and enjoining Defendants, their employees and agents from enforcing or threatening to enforce the unconstitutional New Orleans ordinances, including and especially § 154-1658;

2. That a preliminary injunction and permanent injunction be issued restraining and enjoining Defendants and their employees and agents from enforcing or threatening to enforce LA R.S. 14:326;

3. That a declaratory judgment be issued holding that LA RS 14:326 is unconstitutional both facially and as applied;

4. That a declaratory judgment be issued holding that the New Orleans permit scheme is unconstitutional, both facially and as applied;

5. That reasonable attorneys' fees, expenses and costs be awarded to Plaintiffs pursuant to 42 U.S.C. § 1988 and any other applicable provision of law;

6. That this Court grant all equitable and further relief which the Court deems just and proper.

Respectfully Submitted,

_____
Carol Kolinchak (#22495)
Trial Attorney
1340 Poydras Street, Suite 2110
New Orleans, Louisiana 70112
(504) 212-2110
*Cooperating Attorney for the American Civil Liberties Union Foundation of Louisiana*

_____
Katie Schwartzmann (#30295)
P.O. Box 56157
New Orleans, Louisiana 70156
(504) 592-8056
*Staff Attorney for the American Civil Liberties Union Foundation of Louisiana*