UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SOCIAL AID AND PLEASURE CLUB<br>TASK FORCE, ET AL. | CIVIL ACTION |
| VERSUS | NO. 06-10057 |
| CITY OF NEW ORLEANS, LOUISIANA,<br>ET AL. | SECTION "N" (5) |

# ORDER AND REASONS

Before the Court is the Motion to Dismiss Complaint (Rec. Doc. No. 9) filed on behalf of Defendant Kathleen Blanco, Governor of the State of Louisiana, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The motion is opposed. Upon reviewing the submissions of the parties and the pertinent law, the Court finds that Defendant's motion is well-founded. Accordingly, the Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

This is an action for declaratory and injunctive relief and nominal damages brought by Social Aid and Pleasure Club Task Force,[1] Tamara Jackson, Michelle Longino, Anthony Hookfin, Letecha Watkins, Herman Palmer, Corey Woods, Joe Stern, Desiree Jones, Byron Hogan, Sable Lewis, Linda Porter, Perry Franklin, Nathaniel Willis, Frank M. Allen, Wendell Jackson, Jenean Sanders, and Cornell Glasper. Plaintiffs are members of Social Aid and Pleasure Clubs, organizations that sponsor Second Line parades in the New Orleans area.

On January 31, 2006, following a January 15, 2006 shooting during a Second Line parade,

---

[1] The Social Aid and Pleasure Club Task Force is a Louisiana non-profit organization operating in the State of Louisiana and domiciled in the City of New Orleans. Plaintiff Tamara Jackson is the President of the Social Aid and Pleasure Club Task Force.

Warren J. Riley, Superintendent of the New Orleans Police Department, issued a memorandum announcing an increase in police requirements for Second Line parades "[i]n order to create a safer environment before, during, and after" the parades. (Rec. Doc. No. 3-3, p. 32). In addition to setting forth increased police presence requirements, the memorandum stated that groups seeking to hold a Second Line parade must prove compliance with the bond requirements set forth in La. R.S. 14:326.[2] (Rec. Doc. No. 3-3, p. 32).

On November 16, 2006, the Plaintiffs filed a complaint and motion for preliminary injunction pursuant to 42 U.S.C. §§ 1983 and 1988 against the City of New Orleans, Ray Nagin, Mayor of New Orleans, Warren J. Riley, Superintendent of the New Orleans Police Department, and Kathleen Blanco, Governor of the State of Louisiana. Plaintiffs seek a preliminary injunction, declaratory judgment, nominal damages, and permanent injunctive relief to redress alleged violations of Plaintiffs' constitutional rights. Specifically, Plaintiffs seek judicial review of the New Orleans municipal parade permit scheme and La. R.S. 14:326 on the grounds that they infringe upon Plaintiffs' rights under the under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs allege that the police escort and bonding requirements imposed on the Social Aid and Pleasure Clubs are unreasonable and excessive and that the enforcement of the statutes governing the parade permit scheme threaten to eliminate the existence of the Second Line parade

---

[2] La. R.S. 14:326 makes it a misdemeanor for any group to hold a parade on any public thoroughfare in any municipality unless the group obtains a permit in advance. Application for the permit must be made to the mayor and governing authority of the municipality. Permits may be granted provided that a $10,000 bond is filed with the mayor and municipal governing authority as security for any damage or injury which may occur in connection with the parade. The statute contains explicit exceptions for legitimate labor organizations, professional firefighter or police associations, lawful activities of labor unions, parades held or sponsored by the governing authority of a municipality or parish, Mardi Gras parades, school parades, parish parades, and state, parish, or municipal fairs. The statute only applies to parishes with a population of more than 450,000. The statute carries a maximum fine of $1,000 and a maximum term of imprisonment of six months.

tradition.

On December 11, 2006, Governor Blanco filed the instant motion to dismiss, asserting that this Court lacks subject matter jurisdiction over the claims against her because the Governor is entitled to immunity from suit in federal court under the Eleventh Amendment.

## II. LAW AND ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction. The Court must grant a motion to dismiss for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (*quoting Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir.1996)). A district court may dismiss an action for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981); *see also Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997) (citations omitted). The party who invokes federal court jurisdiction bears the burden of showing that jurisdiction is proper. *Dow v. Agrosciences, LLC v. Bates*, 332 F.3d 323, 326 (5th Cir.2003). Defendant Blanco raises a "facial attack" on the complaint. Accordingly, the Court must examine whether plaintiffs have sufficiently alleged a basis for subject matter jurisdiction, taking all of their allegations in the complaint as true. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 510 (5th Cir.1980) (*citing Mortensen v. First Federal Savings & Loan*, 549 F.2d 884, 891 (3rd Cir.1977)).

**B.  Analysis**

Plaintiffs seek to enjoin Governor Blanco from enforcing or threatening to enforce La. R.S. 14:326.[3] Governor Blanco contends that plaintiffs' claims against her must be dismissed for lack of subject matter jurisdiction because she is shielded by Eleventh Amendment immunity.  The Eleventh Amendment precludes actions brought against a state in federal court by its own citizens or citizens of another state, absent consent, waiver, or abrogation of the state's sovereign immunity. *See* U.S. Const. amend. XI; *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347 (1974); *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S.Ct. 504 (1890).  The Eleventh Amendment also prohibits suits against state officials when the state is the real party in interest.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908 (1984).  However, the Supreme Court has carved out an exception to Eleventh Amendment immunity for suits seeking declaratory or injunctive relief against state officials who violate federal law.  *See Ex Parte Young*, 209 U.S. 123, 159-60, 28 S.Ct. 441, 454 (1908).

The *Ex Parte Young* "fiction" provides that a state official who violates the United States Constitution in enforcing a statute is "stripped of his official or representative character" and is therefore not permitted to share the state's Eleventh Amendment immunity from suit. *See id.* at 159-60, 28 S.Ct. at 454.  The Court in *Ex Parte Young* nonetheless cautioned against reading this immunity exception too broadly to permit plaintiffs to test the constitutionality of statutes against state attorneys general and governors merely because of their status as state officers. *See id.* at 157, 28 S.Ct. at 453.  Rather, in order to make a state official a party defendant in a suit to enjoin the

---

[3] Plaintiffs seek to enjoin the City of New Orleans, Mayor Nagin, and Superintendent Riley from enforcing the City's municipal ordinances governing the parade permit scheme, including and particularly §§ 154-1653 and 154-1658.

4

enforcement of an allegedly unconstitutional statute, "it is plain that such officer must have *some connection* with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* (emphasis added). Federal courts have construed *Ex Parte Young* narrowly and have held that the requisite connection exists only when the state official has the authority to enforce the challenged statute and has shown an intention to enforce it. *Fox v. Reed*, 2000 WL 288379 at *3 (E.D.La. 2000).

The Fifth Circuit analyzed *Ex Parte Young*'s "some connection" requirement in *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir.2001). In that case, plaintiffs named as defendants the Attorney General and Governor of Louisiana. *Id.* at 409. The Fifth Circuit, sitting en banc, held that the Eleventh Amendment barred the lawsuit from being heard in federal court. It concluded that the *Ex Parte Young* exception applies only when the "named defendant state officers have *some connection with the enforcement of the act* and 'threaten and are about to commence proceedings' to enforce the unconstitutional act." *Id.* at 416.

In this case, Plaintiffs do not allege that Governor Blanco is specially charged with the duty of enforcing the statute, nor that she has threatened or is threatening to enforce the statute.[4] Rather, Plaintiffs contend that Governor Blanco's general duty to implement and enforce state law under the Louisiana Constitution[5] is sufficient to establish the requisite connection to the statute. The Court disagrees. While enforcement power may be "found implicitly" in state law other than the challenged statute, it may not be implied from the general duty of the governor to faithfully execute

---

[4] On the contrary, the duty to enforce the statute would fall upon the chief law enforcement officer in Orleans Parish, Superintendent Riley. Further, any resulting criminal prosecution under the statute would be conducted by the district attorney of Orleans Parish, Eddie J. Jordan, Jr.

[5] Article 4, Section 5 of the Louisiana Constitution of 1974 provides that "[t]he governor shall be the chief executive officer of the state ... and shall see that the laws are faithfully executed."

5

state law. *Okpalobi*, 244 F.3d at 419.

> [T]he *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required "connection," but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. For a duty found in the general laws to constitute a sufficient connection, it must "include [ ] the right *and the power* to enforce the statutes of the state, including, of course, the act in question ..."

*Id.* at 416-17.

The Court finds that the connection between Governor Blanco and the enforcement of La. R.S. 13:326 is too attenuated to invoke the *Ex Parte Young* exception. This conclusion is supported by the lack of any stated intention by Governor Blanco to enforce the statute against the Plaintiffs or anyone else. *See Fox v. Reed*, 2000 WL 288379 (E.D.La. 2000); *see also Ousset v. Taylor*, 2000 WL 492101 (E.D.La. 2000). Accordingly, the Eleventh Amendment bars Plaintiffs' claims against Governor Blanco and mandates their dismissal.

### III. CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that the Motion to Dismiss filed by Governor Kathleen Blanco is **GRANTED**.

New Orleans, Louisiana, this   9th   day of March, 2007.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**